IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 05-03029-01-CR-S-ODS |
| CHARLES WILLARD WOLF, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant has filed a Motion to Suppress Evidence in which he asserts that all evidence seized as a result of an illegal entry into his residence on February 12, 2004, should be suppressed. The government has responded to that motion.

The matter was set for an evidentiary hearing, which was held before the undersigned on November 30, 2005. The defendant was present with counsel, Jeffrey M. Merrill. The United States was represented by Randall D. Eggert, Assistant United States Attorney.

It is defendant's contention that Officer Britton and the confidential informant illegally entered his home by forcing entry without a warrant and without defendant's permission, and thereafter observed contraband and firearms. These observations were the basis of a subsequent search warrant, and defendant seeks suppression of the evidence seized as a result of that warrant as "fruit of the poisonous tree."

The United States first called COMET Drug Task Force Officer Scott Britton. On February 12, 2004, he was conducting an investigation of defendant. He came into contact with

1

him after he received a telephone call from Frank Lambrecht, Deputy Sheriff for Cedar County, who stated that they had information from a reliable confidential informant about having purchased methamphetamine from defendant. The confidential informant had pending criminal charges and wanted to help herself by working with law enforcement. Once the officers received this information, it was their intention to establish the reliability of the confidential informant by conducting a controlled drug buy at defendant's residence. They traveled to defendant's residence on February 12. The confidential informant was equipped with an audio digital recording device. Officer Britton had experience using this kind of device in the past, and it had always accurately recorded the conversation. He double-checked to make sure it was functioning properly. The officer testified that there was no way that the confidential informant could have tampered with the device. After the contact with defendant was over, he immediately took the device from the confidential informant, took the chip, and transferred the information to a CD-Rom disc. Officer Britton stated that the disc accurately reflected the conversation. In listening to it, he recognized the voices of defendant, the confidential informant, and his own voice. He did not believe, based on his experience, that the device had been tampered with in any way. Regarding the plan for the controlled buy, the confidential informant was to attempt to buy two grams of methamphetamine, and to try to arrange to have the officer come inside defendant's residence. She was to use the ruse of asking defendant if her friend could come inside and use the restroom. The officer saw the confidential informant go to the door, and knew that she knocked from the audio recording.

The digital recording was played in court, and then Officer Britton responded to questions about the recording. The officer stated that, after the informant knocked on the door, defendant acknowledged her presence by saying, "yeah." [Tr. 12]. The confidential informant

2

asked where he was several times, and he indicated he was in the back bedroom. It was the officer's testimony that the tenor of the conversation indicated that they were friends. He knew they had had interactions in the past. There was nothing said on the tape about the confidential informant leaving or about her not being welcome. After defendant came out from the bedroom, the confidential informant asked defendant if her friend could come in and use the restroom. Defendant agreed to let him do so. Regarding how defendant acted towards Officer Britton, once he came inside, defendant greeted him and allowed him to use the restroom. After Officer Britton came out of the bathroom, he engaged in some conversation with defendant and the confidential informant, who were in the bedroom. At that time, the officer saw some items in plain view in the bedroom. Defendant allowed him to sit in the living room while they were having a drug-related conversation in the back bedroom. As he sat there, he also saw items in plain view, which served as the basis for a later state search warrant. He did not engage in any behavior that would have coerced defendant into allowing him to stay in the residence. He had a firearm, but it was not visible, and the informant was not armed. The confidential informant did not purchase narcotics from defendant that night, because he wanted sexual favors in exchange for the methamphetamine. Officer Britton never sensed that his presence was not welcome during the time that he was there. Regarding the state of the door where they entered, he did not see any signs that it had been forced open or knocked open. It was his recollection that the door did not have a doorknob or door handle, but possibly had some type of latch. He could not recall any damage to the door.

On cross examination, the officer testified that when the confidential informant got an oral response from defendant, she was still outside the door. He indicated that she responded to defendant's voice by opening the door and calling in to defendant. He did not believe that the

3

door had a handle or door knob on the outside or the inside. Therefore, the mode of entry was by pushing the door open. Based on the audio recording device, it was the officer's testimony that the confidential informant knocked several times, heard defendant acknowledge her by saying, "yeah," [Tr. 19], and then she opened the door and asked defendant where he was. He acknowledged that he did not have her in constant visual contact, because he was in his vehicle part of the time. Officer Britton reiterated that defendant made no objection to the confidential informant's entry. He acknowledged that it appeared that the informant opened the door, rather than defendant, and that he never heard a clear invitation to enter from defendant. The officer stated that he believed the voice on the tape to be defendant's voice, although there was another person inside asleep on the sofa. Regarding the firearms he saw, he observed a rifle on a coffee table in the living room, and two handguns in holsters hanging on the wall.

When the search warrant was applied for, some of his observations from what he saw in the residence were included in the affidavit. Officer Frank Lambrecht was the affiant. The search warrant was executed the next day, but he was not present. The best he could recall, drug paraphernalia and firearms were found during the execution of the search warrant.

Defendant called Todd Wilson to the witness stand. He has known defendant for about eight years. Mr. Wilson testified that he had been at defendant's home on multiple occasions, and considers him a friend. He was at the residence on February 12, 2004. He was visiting, and then fell asleep on the sofa. Another individual was also there, who was also asleep on the other side of the sofa. Mr. Wilson remembered that Sherry Harp came to the door with another person. They woke him up when they entered. No one let them in. Defendant was in his bedroom, as far as he knew. He woke up, saw the confidential informant with a man behind her, and then he rolled over and went back to sleep. He never heard defendant invite the woman in

4

nor did he ask her to leave.  He did not hear defendant invite the man in either.  He never heard any conversation.  To enter the house, you must bump the door pretty hard, lean against it, or kick it to get it open.  Mr. Wilson testified that he has known defendant a long time, and that he usually kicked the door to get it open.  He stated that when the two individuals came in, he just glanced up, as the noise startled him.  He could not say for sure where defendant was when they entered.  From defendant's bedroom, the front door could not be seen.  The individuals entered and went towards defendant's bedroom, and Mr. Wilson went back to sleep.

On cross examination, the witness testified that he did not notice the drug paraphernalia in the living room where he was sleeping, even though he had been there for three-and-a-half hours.  He did see the firearms.  He was at the house to visit and to talk about work.  It was his testimony that when he went to visit defendant, he wouldn't really knock.  He would just come to the door and say, "hey, Charlie, are you here?" [Tr. 40].  This was a common practice for a few of defendant's good friends.  The front door did not have a knob on it, and he basically would just walk in and yell towards the back whenever he went to see defendant.  Mr. Wilson acknowledged that the voices on the audio recording must have been the voices of defendant, the confidential informant, and the officer, because he did not say anything when they entered.

On redirect examination, Mr. Wilson stated that he recognized the female who came in, and he had known her for quite a while.  It was his testimony that he knew her to enter defendant's house in the same manner that he typically did.

Based on the testimony adduced at the hearing, the Court finds that it should be recommended that defendant's Motion to Suppress be denied.  Having heard the audio recording of the event in question, as well as the testimony of Officer Britton and Mr. Wilson, the Court is satisfied that defendant consented to having the confidential informant enter his

5

home. It is clear that she knocked, he acknowledged her presence, she opened the door and went inside, and he came out and greeted her. It was obvious from the recording that they engaged in a relaxed, friendly conversation from the outset. Regardless of the fact that he did not acknowledge her identity or formally invite her in, there is nothing to suggest that she was in his residence without his approval. There is absolutely no evidence to suggest that she or Officer Britton forced entry into his home. Further, there is no indication from the evidence that either the confidential informant or Officer Britton were asked to leave defendant's home. Regarding the manner of entry, the testimony and photographs indicate that there was not a regular door knob or lock on the door. According to the testimony of Mr. Wilson, it was his practice to enter defendant's house by calling out, and then pushing or kicking the door open. Additionally, this method was also used by other good friends of defendant, including the confidential informant. Mr. Wilson also testified that the confidential informant was familiar to him as a visitor at defendant's home, whom he had seen there many times. Under the totality of the circumstances, the Court is confident that the confidential informant was in defendant's home with his permission. The law is clear, moreover, that the fact that the confidential informant used a ruse to gain entry for Officer Britton through defendant's consent does not violate the Fourth Amendment. United States v. Wright, 641 F.2d 602, 604-05 (8th Cir. 1981).

Regarding the observations made by Officer Britton when he was inside the residence, the credible evidence adduced at the hearing indicates that the items seen by the officer, which served in part to establish probable cause for the issuance of the search warrant, were in plain view. This was, in fact, confirmed by defendant's witness, Mr. Wilson, who admitted to seeing firearms. Defendant's attempts to characterize what occurred inside the residence as a search, to which he did not consent, are simply not convincing.

6

A full review of the evidence in this case supports a finding that defendant consented to the confidential informant and the officer entering his home, despite the fact that they were working together in an undercover capacity. Further, the evidence convincingly establishes that an illegal search did not occur.

Accordingly, the Court finds that the credible evidence establishes that there was no forced entry into defendant's home. The evidence also indicates that the items that were seen by Officer Britton were in plain view. Therefore, there is no basis to suppress the evidence seized in this case.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress be denied.

      /s/ James C. England
      JAMES C. ENGLAND
      United States Magistrate Judge

Date: 12/23/05